## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF LOUISIANA
## MONROE DIVISION

| | | |
|---|---|---|
| **JESSIE MARTIN** | * | **CIVIL NO. 06-1383 - P** |
| **VERSUS** | * | **JUDGE JAMES** |
| **VENETIA MICHAEL, WARDEN** | * | **MAGISTRATE JUDGE HAYES** |

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a Petition for Writ of *Habeas Corpus* under 28 U.S.C. § 2254 (Document No. 1) filed by *pro se* Petitioner Jessie Martin ("Martin"). Respondent opposes Martin's petition. (Document No. 15). For reasons stated below, it is recommended that the petition be **DISMISSED with prejudice**.

## BACKGROUND

On May 18, 2004, Martin was convicted in state court of attempted manslaughter, for which he initially received a sentence of 18 years at hard labor, with the last ten years suspended. Thereafter, the state filed an habitual offender bill to which the defendant agreed to be sentenced as a second felony offender and was sentenced to serve twelve years at hard labor. The defendant appealed. The Second Circuit Court of Appeal affirmed the conviction, but ruled that the habitual offender adjudication contained error patent and vacated the sentence. *State v. Martin*, 39,846 (La. App. 2 Cir. 08/17/05); 913 So.2d 862. The court remanded the case to the district court for re-sentencing, and on September 27, 2005, defendant was again sentenced to 12 years at hard labor with credit for time served. Martin then filed an application for Writ of Certiorari to the Louisiana Supreme Court. That application was denied on June 14, 2006. *State v. Martin*, 2006-KO-0110 (La. 6/14/06); 929 So.2d 1267. This petition followed on August 15, 2006.

Martin raises the following claims that he also raised on appeal: (1) his conviction was obtained through a violation of his Sixth Amendment right to confront and cross examine the witnesses against him because the 911 tape and statements of the victim made at the scene were allowed into evidence even though the victim herself did not testify; (2) the state failed to meet its burden of proving all of the elements of the charged offense; and (3) the twelve year sentence imposed was excessive.

## LAW AND ANALYSIS

<u>Exhaustion and Timeliness</u>

Respondent concedes, and the Court finds, that Martin has presented all of his claims to the Louisiana Supreme Court in his appeal and thus has exhausted his state remedies, and that his present federal petition is timely under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").

<u>Standard of Review</u>

The Court's review of Martin' federal habeas petition is governed by the AEDPA. *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). Under the AEDPA, a court cannot grant a petitioner federal habeas corpus relief unless the state court proceeding resulted in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). "A merely incorrect state court decision is not sufficient to constitute an unreasonable application of federal law; rather the decision must be objectively unreasonable." *Virgil v. Dretke*, No. 03-21129, 2006 WL 1000567, at *3 (5th Cir. April 18, 2006). A court should not grant habeas relief "when a state court, at a minimum, reaches a 'satisfactory conclusion'" *Morrow v. Dretke*, 367 F.3d 309, 313 (5th Cir. 2004) (quoting *Williams v. Taylor*, 529 U.S. 362, 410-11 (2000)).

**Sixth Amendment/ Confrontation Clause**

Martin argues that his right to confront witnesses was violated by the introduction of the 911 tape and the statements made by the victim to the police at the scene. First, Martin claims that the voice of the caller on the 911 tape was never identified as that of the victim, Claudia Evans. He raised this same argument at trial and on appeal. A review of the evidence shows that the 911 tape was properly authenticated by the 911 operator who took the call, and by the victim's mother, who testified that her daughter called to her while making the 911 call. Furthermore, the 911 operator specifically asked the mother if the victim was Claudia Evans, to which the mother responded in the affirmative and, as the trial judge noted, the location of the stabbing is identical to the address mentioned on the tape. Therefore, while the testimony of the victim at trial would certainly have been preferable, the undersigned cannot say that the state court ruling resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law. It is recommended that the petitioner's claim on this basis be DENIED.

Martin also claims that the victim's statements on the 911 tape were testimonial and therefore that their admission into evidence without the victim having testified constituted a Confrontation Clause violation. In *Crawford v. Washington*, 541 U.S. 36 (2004), the Supreme Court held that the Confrontation Clause bars the "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant . . . had a prior opportunity for cross-examination." *Id.* at 53-54. The Court specifically declined to define the term "testimonial," stating only that "[w]hatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Id.* at 68. However, in *Davis v. Washington*, 126 S.Ct. 2266 (2006),

3

the Court revisited *Crawford* and specifically addressed the issue of whether "statements made to law enforcement personnel during a 911 call or at a crime scene are 'testimonial' and thus subject to the requirements of the Sixth Amendment's Confrontation Clause." *Id.* at 2270.

In *Davis*, the victim initiated a 911 call while involved in a domestic disturbance with her former boyfriend. *Id.* at 2270-71. In response to the 911 operator's questions, the victim identified her attacker as Davis and described the specifics of the ongoing assault. *Id.* at 2271. At trial, the court admitted the recording of the 911 call despite the fact that the victim did not testify. *Id.* After noting that *Crawford* was not helpful in characterizing the victim's statements as testimonial or non-testimonial, the Court delineated the following framework:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

*Id.* at 2273-74. After applying this test to the facts in *Davis*, the Court concluded that the victim's statements in the 911 call at issue were not testimonial. The court reasoned that "[a] 911 call . . ., and at least the initial interrogation conducted in connection with a 911 call, is ordinarily not designed primarily to 'establis[h] or prov[e]' some past fact, but to describe current circumstances." *Davis*, 126 S.Ct. at 2276. The Court noted that the victim was "speaking about events *as they were actually happening*, rather than 'describ[ing] past events'" and that "[a]lthough one *might* call 911 to provide a narrative report of a crime absent any imminent danger, . . . [the victim's] call was plainly a call for help against bona fide physical threat." *Id.* (emphasis in original). The Court also found that the nature of the questions posed by the 911

4

operator indicated that the purpose of the interrogation was to ". . . *resolve* the present emergency, rather than simply to learn . . . what had happened in the past." *Id.* Finally, the Court noted that the fact that the victim's answers were frantic and "provided over the phone . . . in an environment that was not tranquil" indicated that the statements were not testimonial. *Id.*

In the case at bar, the exchange between Evans and the 911 operator was as follows:

> Evans: "Hey . . . umm . . . I need an ambulance at 1623 Perry. Jessie Martin done stabbed me."
> Operator: "What happened?"
> Evans: "Jessie Martin . . . Jessie Martin done stabbed me."
> Operator: "He stabbed you?"
> Evans: "Yes ma'm. Please come on."
> Operator: "Let me connect to the ambulance, hold on a minute."
> Evans: "Come on. Jessie Martin done stabbed me. Come on."
> Operator: Okay where's he at now?"
> Evans: "He over here. Come on."

At this point, the operator had an ambulance sent to Evans' home. Evans' mother, Catherine Johnson, then got on the line and had the following exchange with the operator:

> Johnson: "Hey."
> Operator: "Hello."
> Johnson: "Hey."
> Operator: "Hey."
> Johnson: "Yeah, who is this?"
> Operator: "This is . . this is the police department and the ambulance."
> Johnson: "Yes ma'm."
> Operator: "What's going on over there?"
> Johnson: "Huh?"
> Operator: "What's going on over there?"
> Johnson: "I don't know. I really don't know. I'm laying up here asleep . . . she done

5

come in and I told her to stay in . . . from out there. I guess he done come out there and stabbed her now in the (inaudible). Jessie Ma . . . Jessie Martin."

Operator: "Okay, that's Claudia Evans?"

Johnson: "Yes ma'm."

Operator: "Alright, we'll send somebody out there."

Johnson: "Ok."

Operator: "Ok."

Viewing the facts in light of the Court's decision in *Davis*, the undersigned concludes that Claudia Evans' statements on the 911 tape were non-testimonial and, therefore, that their admission did not implicate the Confrontation Clause. When the exchange is viewed objectively, it is clear that the primary purpose of Evans' identification of Martin as her attacker and of the questioning by the 911 operator was to address and resolve the ongoing emergency. At the time Evans initiated the 911 call, she had been stabbed seven times and was in need of medical attention. It is clear from the sound of Evans' voice on the tape that she was having trouble breathing and was in considerable distress, which is evidenced by her repeated pleas for the operator to send help. Furthermore, the questions posed by the operator were necessary to allow her to evaluate the situation and provided much-needed assistance to Evans. *See United States v. Clemmons*, 461 F.3d 1057, 1060 (8th Cir. 2006) (finding that a police officer's questioning of a gunshot victim about who shot him at the scene but after the shooting were non-testimonial in that their primary purpose was to "enable [the officer] to assess the situation and to meet the needs of the victim.").

Martin contends that, because he was not present in the house at the time Evans initiated the 911 call, the incident was over and, as such, there was no ongoing emergency. Accordingly, Martin argues that the 911 call was a narrative of past events and therefore was testimonial under

6

the *Davis* framework. However, Martin's interpretation of the Court's statements in *Davis* is far too limited. First, Claudia Evans' statements to the 911 operator seem to indicate that she thought that Martin was still at the residence at the time she made the 911 call. Nonetheless, even if the 911 call was made after Martin had fled the scene of the attack, it cannot be said that the emergency ended at that point. The fact remains that, at the time Evans made the 911 call, she had seven stab wounds, was bleeding heavily, and was in need of medical attention. The undersigned concludes that it would be clear to any reasonable listener that Evans and the 911 operator were dealing with an ongoing emergency. *See Clemmons*, 461 F.3d at 1060-61. As the Court stated in *Davis*, Evans was clearly ". . . seeking aid, not telling a story about the past." *Davis*, 126 S.Ct. at 2279.

    Martin argues that this case is significantly different from *Davis* in that the jury was allowed to hear the entire 911 call. Having already determined that the admission of Evans' statements on the 911 tape did not violate the petitioner's Confrontation Clause rights, all that remains to be addressed is the exchange between the 911 operator and Claudia Evans' mother, Catherine Johnson, in which Johnson states her opinion as to what happened to her daughter. However, a review of the record indicates that the trial judge, after admitting the entire 911 tape into evidence, instructed the jury to disregard the portion of the tape where "the louder female voice makes a statement where she is guessing about what might have happened." State Court Record p. 55. Given the cautionary and limiting instruction from the trial judge, it is recommended that petitioner's claim on this basis be DENIED.

    Martin also contends that his Confrontation Clause rights were violated when the trial court allowed Evans' statements to the police officer who responded to the 911 call to be

7

admitted into evidence. At trial, Officer Joe Reynolds testified that he was one of the first officers to arrive at Evans' home after the incident. State Court Record at 13. According to Reynolds, when he got there, he found Evans sitting in a chair in the kitchen with blood all over her and all over the floor around her. *Id.* at 14. After placing his fingers in her stab wounds to stop the bleeding, Reynolds asked Evans who stabbed her, at which time Evans implicated Martin. *Id.* at 15. Martin contends that Evans statement in this regard were in response to investigative questions; therefore, argues Martin, the statements were testimonial and admitted in violation of the Confrontation Clause. The undersigned, however, does not agree.

The Court is aware of no Fifth Circuit authority addressing this issue; however, in the aforementioned *United States v. Clemmons*, the Eighth Circuit applied the *Davis* framework to a set of facts identical in most respects to those at bar and concluded that the Confrontation Clause was not implicated. In *Clemmons*, two police officers were dispatched to the home of Jamil Williams. 461 F.3d at 1058. When they arrived at the home, the officers found Williams lying on the ground with a pool of blood around his right left and talking on his cell phone. *Id.* at 1059. After discerning that Williams had been shot and instructing him to get off of the phone, one of the officers asked Williams who had shot him, to which Williams responded that Antonio Clemmons had done so and had stolen his pistol. Clemmons was eventually arrested for assault and battery; however, in a superceding indictment, he was charged with two counts of being a felon in possession of a semi-automatic pistol, to which he pled guilty. *Id.* at 1059. On appeal, Clemmons argued that the district court erred in denying his pre-trial motion to exclude the statements Williams made to the officer at the scene of the shooting.

After discussing *Davis*, the Eight Circuit stated that "[t]he circumstances, viewed

8

objectively, indicate that the primary purpose of [the officer's] questions was to enable him to assess the situation and to meet the needs of the victim." *Id.* at 1060. The court noted the officer's testimony that his purpose in speaking to the victim was ". . . to investigate, one, his health to order him medical attention, and, two, try[ ] to figure out who did this to him." *Id.* Accordingly, the court concluded that "[a]ny reasonable observer would understand that the purpose of the interrogation was to enable police assistance to meet that emergency" and, therefore, that Williams statements were non-testimonial. *Id.* at 1060-61.

      The undersigned finds the Eight Circuit's reasoning in *Clemmons* to be persuasive on the facts at bar. Although an ambulance was presumably already en route to Evans' location, Officer Reynolds testified that, when he arrived at the scene, Evans was sitting in her kitchen with visible stab wounds and with blood all over her and the floor around her. Officer Reynolds plugged the stab wounds with his fingers and then asked Evans, who was sweaty and having trouble breathing, who stabbed her. Clearly, as in *Clemmons*, Officer Reynolds' questioning, viewed objectively, was necessary for him to assess the situation and the meet the ongoing emergency. Therefore, because Evans' implication of Martin in response to Officer Reynolds' question was not testimonial, its admission does not implicate the Confrontation Clause.[1]

---

[1]Martin argues that Evans' statement to Officer Reynolds is similar to the victim's statements in *Hammon v. Indiana*, 829 N.E.2d 444 (Ind. 2005), the appeal of which was also decided in *Davis*. However, the facts of *Hammon* are easily distinguished from those at bar. In that case, police responded to a domestic disturbance at the Hammon's home. *Davis*, 126 S.Ct. at 2273. When they arrived, Amy Hammon was standing on the front porch. *Id.* Although she appeared frightened, Amy told the officers that "nothing was the matter." *Id.* After the officers searched the house and found Amy's husband, Hershel, Amy re-entered the house. *Id.* In a separate room from Hershel, the officers again asked Amy what had happened. *Id.* Hershel repeatedly attempted to participate in the conversation but the officers kept him separate from Amy. *Id.* After Amy recounted what had occurred, the officers had her sign an affidavit. *Davis*, 126 S.Ct. at 2273. At Hershel's domestic battery trial, the officer who had questioned Amy

9

Furthermore, even if the trial court's admission of Evans' statement to Officer Reynolds violated Martin's right to confrontation, the error was harmless. "Before a court may grant relief on the basis of a violation of the Confrontation Clause, the court must apply harmless error analysis." *Kittelson v. Dretke*, 426 F.3d 306, 319 (5th Cir. 2005). On *habeas* review, under *Brecht v. Abrahamson*, 507 U.S. 619 (1993), ". . . a defendant must show that the error resulted in 'actual prejudice.'" *Robinson v. Quarterman*, 2006 WL 3497313, *3 (5th Cir. Dec. 5, 2006) (quoting *Brecht*, 507 U.S. at 637-38)). "Actual prejudice is present if the error 'had a substantial and injurious effect or influence in determining the jury's verdict.'" *Id.* (quoting *Brecht*, 507 U.S. at 637). "Under *Brecht*, 'a constitutional trial error is not so harmful as to entitle a defendant to habeas relief unless there is more than a mere reasonable possibility that it contributed to the verdict.. . ." *Nixon v. Epps*, 405 F.3d 318, 329-30 (5th Cir. 2005) (citing *Billiot v. Puckett*, 135 F.3d 311, 318 (5th Cir. 1998)).

In this case, there is no likelihood that the admission of Evans' statement to Officer Reynolds had a substantial and injurious effect on the jury's verdict. First, Evans herself

---

testified as to what Amy told him had occurred, over the defendant's objection. *Id.* On appeal, the Supreme Court concluded that Amy's statements were testimonial as the officer's interrogation was clearly part of an investigation of past criminal conduct. *Id.* at 2278. The Court noted that (1) there was no ongoing emergency in that the officers heard no ongoing argument and Amy told them everything was fine with they arrived and (2) when the officer questioned Amy the second time he was attempting to determine "what happened" rather than "what is happening." *Id.* Thus, concluded the Court, the sole purpose of the questioning was to investigate a crime. *Id.*
  In the case at bar, however, there was an ongoing emergency at the time Officer Reynolds questioned Evans. Again, she had been stabbed seven times and was bleeding profusely. Furthermore, unlike in *Hammon*, Officer Reynolds' questioning took place soon after Evans was stabbed rather than some time later and was not a structured interrogation. In short, objectively viewed, Officer Reynolds' questions were for the purpose of addressing the exigency of the emergency, not investigating a crime.

10

identified Martin as the individual who stabbed her on the aforementioned 911 tape, the admission of which the undersigned has already determined did not violate Martin's confrontation rights. Therefore, Evans' statement to Officer Reynold's was cumulative. *See Brecht*, 507 U.S. at 639 (finding that the fact that improperly admitted evidence was cumulative contributed to a finding of harmless error). Furthermore, in his recorded statement that was admitted into evidence and played for the jury, Martin admitted to having an altercation with Evans on the night in question and to "hitting" her with a knife, again supporting a finding that the evidence challenged by the defendant was cumulative.[2] Finally, nothing in Evans' statement to Officer Reynolds bore any relation to whether Martin acted in self defense or whether Martin had the requisite specific intent needed to support a manslaughter conviction, both of which were significant issues at trial. Therefore, any error committed by the trial court in admitting Evans' statements to Office Reynolds was harmless, and it is recommended that the petitioner's claim on this basis be DENIED.

**Sufficiency of Evidence**

Martin argues that the evidence at trial was insufficient to prove all of the elements of the offense with which he was charged. This argument is in part dependent on his argument that the introduction of evidence as outlined above violated his right to confront witnesses. Given the recommendation regarding the admissibility of the evidence, the undersigned also concludes that

---

[2] Martin claimed that he acted in self defense, that he was not aware that Evans had been stabbed seven times, and that the knife he used was not the knife recovered by the police. However, he also stated numerous times that he did not intend for the situation to escalate as far as it did. The jury heard this evidence and obviously chose not to believe Martins' claim of self defense. Such a credibility determination is solely within the purview of the jury and not this Court on *habeas* review.

the evidence was properly considered by the jury in reaching its verdict to convict the petitioner. In addition, Martin argues that the government failed to prove specific intent because the evidence showed that he was too intoxicated to form specific intent. Again, this argument was considered by the Court of Appeal, which found that the totality of the evidence supported the jury's verdict. Specifically, the evidence showed that the defendant was not too intoxicated to flee the scene, to remove articles of clothing containing blood evidence, or to hide after the crime.

At trial, the petitioner produced no evidence of intoxication. Instead, he relied on the testimony of the State's witnesses, namely Catherine's Johnson's testimony that she saw the petitioner and the victim outside drinking together for approximately six hours before the incident, and Officer Wilson's testimony that he did not attempt to interview the petitioner on the night of the incident because he "appeared very intoxicated," to support his intoxication argument. However, the fact that there was evidence that the petitioner had been drinking, or even that he was intoxicated, does not necessarily translate to a finding that his intoxication was so great that he was incapable of forming specific intent. The undersigned can find no error of a constitutional magnitude in such finding, and recommends that the petitioner's petition on this ground be DENIED.

**Excessive Sentence**

Finally, Martin claims that his sentence was excessive. This argument clearly falls to the interpretation and application of Louisiana law and therefore is not cognizable on federal habeas review.

A state's interpretation of its own laws or rules provides no basis for federal habeas

corpus relief, because no question of a constitutional nature is involved. *See Williams v. Foti*, 813 F.2d 700 (5th Cir. 1987); *Carrizales v. Wainwright*, 699 F.2d 1053, 1055 (11th Cir. 1983); *Llama-Almaguer v. Wainwright*, 666 F.2d 191, 193 (5th Cir. 1982). Accordingly, "federal courts do not review a state's failure to adhere to its own sentencing procedures . . . " *Nichols v. Estelle*, 556 F.2d 1330, 1331 (5th Cir. 1977), *cert. denied*, 434 U.S. 1020 (1978); *see also Martinez v. Johnson*, 255 F.2d 229, 246 (5th Cir. 2001). "This limitation on federal habeas review is of equal force when a petition, which actually involves state law issues, is 'couched in terms of equal protection and due process.'" *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988) (quoting *Willeford v. Estelle*, 538 F.2d 1194, 1196-8 (5th Cir. 1976)). Because Martin's alleged error in his sentencing is based exclusively on state law issues, it is recommended that Martin's petition on this ground be **DENIED.**

## CONCLUSION

For the reasons stated above, it is recommended that the petitioner's Petition for Writ of *Habeas Corpus* under 28 U.S.C. § 2254 be **DENIED and DISMISSED with prejudice.**

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) business days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE**

**SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 29th day of March, 2007.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE